IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FRANCIS JAMES KEARNS, | CASE NO. 5:22-CV-00390 |
| Petitioner, | DISTRICT JUDGE JAMES S. GWIN |
| vs. | |
| | MAGISTRATE JUDGE AMANDA M. KNAPP |
| OHIO ADULT PAROLE AUTHORITY, | |
| Respondent. | **REPORT & RECOMMENDATION** |

Petitioner Francis James Kearns ("Petitioner" or "Mr. Kearns") filed this habeas corpus action under 28 U.S.C. § 2254 on March 10, 2022, challenging actions of the Ohio State Board of Parole ("Respondent") in connection with conditions that were imposed as a part of his post-release control following his release from prison. (ECF Doc. 1 ("Petition").)

In April 2015, Mr. Kearns was convicted of unlawful sexual conduct with a minor and disseminating matter harmful to a juvenile. (ECF Doc. 1 p. 1; ECF Doc. 8-1 pp. 10-13.) He was sentenced in May 2015 to an aggregate prison term of three years, followed by mandatory post-release control up to five years. (ECF Doc. 1 p. 1; ECF Doc. 8-1 pp. 15-18.) After being released on January 12, 2018, Mr. Kearns began a five-year term of post-release control which included a condition that he have "[n]o unsupervised contact with minors," and that any "supervising adult must be approved by the [Adult Parole Authority ("APA")]." (ECF Doc. 1 p. 1; ECF Doc. 8-1, pp. 81, 83-84, 94, 102, 107-8.)

Since his release, Mr. Kearns has been returned to prison twice for violations of post-release control, both times with violations that included (but were not limited to) unsupervised

1

contact with minors without prior approval. (ECF Doc. 8-1 pp. 81, 83-4, 107-8, 110.) In both circumstances, the minors with whom Mr. Kearns had unsupervised contact were his own minor children, born after his release from prison. (*Id.*; ECF Doc. 1 pp. 1-2.) The Petition challenges Respondent's interpretation of the "no unsupervised contact with minors" condition to preclude unsupervised contact Mr. Kearns' own minor children, seeking a writ of federal habeas corpus based on an argument that his "imprisonment directly contradicts Federal Case law and undermines the case law regarding reasonable Parole." (ECF Doc. 1 pp. 1-2, 6.) Alternately, Mr. Kearns seeks a federal Writ of Mandamus prohibiting Respondent from enforcing the parole condition that he have no unsupervised contact with minors without prior approval. (*Id.* at p. 8.)

On June 13, 2022, Respondent filed a motion to dismiss the Petition, arguing that Mr. Kearns did not exhaust state court remedies prior to bringing this federal habeas corpus action. (ECF Doc. 8.) Mr. Kearns filed a response in opposition, distinguishing the cases cited by Respondent and arguing that federal courts have previously ruled on cases raising similar questions. (ECF Doc. 9.) Also pending before the Court are Mr. Kearns' motions for injunctive relief (ECF Docs. 3 & 4) and his motion for entry of judgment (ECF Doc. 10).

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2. For the reasons set forth in further detail herein, the undersigned recommends that the Court **GRANT** Respondent's Motion to Dismiss (ECF Doc. 8), **DISMISS without prejudice** Mr. Kearns' Petition, and **equitably toll** the AEDPA statute of limitations for the claim raised in the Petition within certain specified parameters. The undersigned also recommends that the Court **DENY without prejudice as MOOT** Mr. Kearns' motions for injunctive relief (ECF Docs. 3 & 4) and motion for entry of judgment (ECF Doc. 10).

## I.  Procedural Background

### A.  State Court Conviction

On March 20, 2015, the Lake County prosecutor filed an information charging Mr. Kearns with the following: Count One – unlawful sexual conduct with a minor in violation of R.C. 2907.04(A); and Count Two – disseminating matter harmful to juveniles in violation of R.C. 2907.31(A)(1).  (ECF Doc. 8-1 pp. 5-6.)  Mr. Kearns waived prosecution by indictment, requested that the charges proceed against him by information, and pled guilty to the charges.  (*Id*. at pp. 8, 10-13.)

On May 18, 2015, Mr. Kearns appeared for sentencing.  (ECF Doc. 8-1 pp. 15-18.)  The trial court sentenced him to thirty-six months in prison on Count 1 and ten months in prison on Count 2, to be served concurrently for a total of thirty-six months.  (*Id*. at p. 16.)  The trial court informed Mr. Kearns that post-release control was mandatory up to a maximum of five years.  (*Id*.)  The trial court found Mr. Kearns was a Tier II Sex Offender Registrant because he pled guilty to a sexually oriented offense as defined in R.C. 2950.01.  (*Id*. at p. 17.)

### B.  Motions for Judicial Release

Mr. Kearns filed a motion for judicial release on March 16, 2016.  (ECF Doc. 8-1 pp. 20-34.)  The state opposed the motion (*id*. at pp. 36-37), and the trial court denied it on March 24, 2016 (*id*. at p. 39).  Mr. Kearns filed a second motion for judicial release on July 25, 2016 (*id*. at pp. 41-48), which was denied on July 27, 2016 (*id*. at p. 50).  He filed a third motion for judicial release on April 24, 2017 (*id*. at pp. 52-67), which was denied on April 27, 2017 (*id*. at p. 69).

C. **Adult Parole Authority Activity**

Mr. Kearns was released from prison on January 12, 2018, after serving his three-year sentence. (ECF Doc. 1 p. 1; ECF Doc. 8 p. 3; ECF Doc. 8-1 p. 100.) He was placed on five years of post-release control. (ECF Doc. 1 p. 1; ECF Doc. 8-1 p. 100.)

On January 12, 2021, the Adult Parole Authority ("APA") served a Violation Report, setting forth five rule violations with corroboration. (ECF Doc. 8-1 pp. 100-05.) The Report notified Mr. Kearns that he was charged with one violation of Rule 2 and four violations of Rule 8. (*Id*.) The two rules as detailed in the Report provided:

> RULE 2. I will follow all orders given to me by my supervising officer or other authorized representatives of the Court or the Department of Rehabilitation and Correction, including, but not limited to obtaining permission from my supervising officer before changing my residence and submitting to drug testing.
>
> RULE 8. I agree to fully participate in, and comply with, Special Conditions that will include programming/intervention to address high and moderate domains if indicated by a validated risk tool selected by DRC and any other special conditions imposed by the Parole Board, Court, or Interstate Compact:
>
> Parole Board Special Conditions: Substance abuse screening & Programming if indicated, NUCWM, Adult Supervising must be approved by APA. No computer or internet access without a third party filter, no social media networking sites; no sexually explicit material or pornography.

(*Id*.) A hearing as to the alleged violations was held on February 22, 2021. (*Id*. at pp. 107-08.) As set forth in the record, the specific release violations for which Mr. Kearns was charged were:

> RULE 2 [Count 1:] Since on or about 12/29/2020, you failed to notify your supervising officer of a change in residency.
>
> RULE 8 Count 1: On or about 1/5/2021, in the vicinity of Ohio, you accessed social media sites, i.e., Inst[]agram.
>
> RULE 8 Count 2: On or about 1/5/2021, in the vicinity of Ohio, you accessed social media sites, i.e., FACEBOOK.

> RULE 8 Count 3: On or about 3/1/2020, in the vicinity of Ohio, you had unsupervised contact with a minor/child under 18 without approval of the Adult Parole Authority.
>
> RULE 8 Count [4]: On or about 7/20/2020, in the vicinity of Ohio you had unsupervised contact with a minor/child under 18 without the approval of the Adult Parole Authority.

(*Id*. at p. 107.) Mr. Kearns was represented by counsel at the hearing and admitted to violating Rule 8 (Counts 3 & 4) but denied violating Rule 2 (Count 1) and Rule 8 (Counts 1 & 2). (*Id*. at p. 108.) With respect to the violations that Mr. Kearns denied, he was found guilty of Rule 8 (Count 1) and not guilty of Rule 2 (Count 1) and Rule 8 (Count 2). (*Id*.) The APA sanctioned Mr. Kearns to 100 in prison, effective February 23, 2021, to be followed by 75-90 days of electronic monitoring. (*Id*. at p. 110.)

Following completion of his prison time sanction, Mr. Kearns was placed on electronic monitoring. (ECF Doc. 8-1 p. 81.) On July 22, 2021, the APA received notification that Mr. Kearns entered a "no cell reception" on his GPS. (*Id*.) He could not be tracked via GPS from 9:14 p.m. on July 21, 2021 to 11:09 a.m. on July 22, 2021. (*Id*.) Ultimately, the APA obtained evidence indicating Mr. Kearns was at a restaurant with his fiancé and two minor children. (*Id*.) He was then tracked from the restaurant back to his residence, where the APA observed his two minor children in his vehicle. (*Id*.) Mr. Kearns was subsequently charged with violations in August 2021. (*Id*. at pp. 81, 83-84.) The charges were:

> RULE 2: On or about 7/21/2021, you failed to comply with a written sanction issued by a Parole Board hearing officer requiring you to successfully complete 75-90 days of electronic monitoring.
>
> RULE 8: On or about 7/22/2021, in the vicinity of Ohio, you had unsupervised contact with a child under the age of 18 without the approval of the APA.
>
> RULE 8: On or about 7/22/2021, in the vicinity of Ohio, you had unsupervised contact with a child under the age of 18 without the approval of the APA.

(*Id*. at p. 83 (cleaned up).) Mr. Kearns appeared for a release violation hearing with counsel and admitted to each of the violations. (*Id*. at p. 84.) His counsel submitted a Memorandum in support of mitigation, arguing that the application of the no unsupervised contact with minors condition to his own minor children was not reasonable and should be removed. (*Id*. at pp. 84, 86-90.) Mr. Kearns was found guilty of each of the charged violations. (*Id*. at p. 84.) The Adult Parole Authority sanctioned Mr. Kearns to 234 days in prison, effective August 27, 2021, along with 60-75 days of electronic monitoring and no unsupervised contact with minors (supervising adult must be approved by the APA). (*Id*. at p. 94.)

As of at least May 10, 2022, Mr. Kearns had completed his prison time sanction for the August 2021 violations and was placed on electronic monitoring. (ECF Doc. 4 pp. 1, 3.)

**D.     Motion to Terminate Post-Release Control**

On January 13, 2022, Mr. Kearns filed a motion to terminate post-release control with the trial court, asserting that the condition prohibiting unsupervised contact with minors was not reasonable as applied to his own children and should be removed. (ECF Doc. 8-1 pp. 71-76.) He also argued that "[h]is Parole must be terminated in order to allow him to fuller re-integrate into society and to prove that he has reformed and learned from the offenses that lead him to this place in the beginning." (*Id*. at p. 76.) (*Id*.) On January 14, 2022, the trial court summarily denied the motion. (*Id*. at p. 79.)

**E.     Federal Habeas Corpus Petition**

Mr. Kearns seeks federal habeas relief, asserting as his ground for relief that:

> [His] imprisonment directly contradicts Federal Case law and undermines the case law regarding reasonable Parole. When reviewing special conditions for Parole, the substantive reasonableness of the condition must be drawn into question.

(ECF Doc. 1 p. 6.) He was incarcerated when his Petition was filed on March 10, 2022, due to the August 2021 parole violations, and argued that he "should be freed from custody immediately and his Parole must be terminated." (*Id*. at p. 8.) In the event that his Petition was was decided after his release from prison, he argued he would still be "under the unconstitutional condition wherein, he would have no contact with his children," and requested that this Court issue "a writ of Mandamus prohibiting the Ohio Adult Parole authority of enforcing a condition upon him allowing no unauthorized contact with minors." (*Id*.) He also requested an order from this Court requiring the Ohio APA "to tailor a condition specifically to [his] Offenses which does not bar him from his family." (*Id*.)

**F.      Motions for Injunctive Relief**

On March 31, 2022, while re-incarcerated for the August 2021 violations, Mr. Kearns filed a Motion for Temporary Restraining Order and Preliminary and Permanent Injunction (ECF Doc. 3), seeking a Court order preventing Respondent "from enforcing an unconstitutional restraint upon him preventing him from seeing his children under fear of being re-incarcerated by the APA" (*id*. at p. 1). After being released from his re-incarceration, Mr. Kearns filed a Supplementary Motion for Temporary Restraining Order and Preliminary and Permanent Injunction on May 10, 2022, arguing:

> The only place that he is prohibited from going to is the house which he owns in full. Petitioner is barred from any contact with his children and is barred from going to the place which houses his studio that serves as his primary source of earning income.

(ECF Doc. 4 at p. 1.) Mr. Kearns renewed his request for a Court order preventing Respondent "from enforcing an unconstitutional restraint upon him preventing him from seeing his children under fear of being re-incarcerated by the APA." (*Id.* at p. 2.)

7

In the pending Motion to Dismiss, Respondent requests that the Court deny Mr. Kearns' requests for injunctive relief as moot. (ECF Doc. 8 p. 8.)

**G.     Motion for Entry of Judgment**

Mr. Kearns filed a Motion for Entry of Judgment on November 18, 2022, requesting that the Court grant him summary judgment and enjoin the APA from prohibiting him from seeing his children, presenting arguments like those set forth in his motions for injunctive relief. (ECF Doc. 10.) He also asserted that: "The APA never filed a Return of Writ as was directed by this Court in the May 12, 2022 Initial Order" and "[a]s the APA has made no effort to address the actual sum and substance of the legal issues at bar, this Honorable Court must rely on the law and argument submitted by Mr. Kearns." (*Id.* at p. 3; *see also id.* at p. 5.)

Respondent filed a response in opposition on December 1, 2022, asserting that entry of judgment is not warranted based on Respondent's failure to file an answer because Respondent was granted leave to file a motion to dismiss in lieu of an answer to the petition. (ECF Doc. 11 p. 2.) Respondent also opposes the motion on the following grounds: default judgment and summary judgment in a habeas proceeding are not appropriate and/or disfavored; Mr. Kearns failed to exhaust his state remedies, warranting dismissal of his habeas case; the federal cases cited by Mr. Kearns are inapposite and do not constitute clearly established Supreme Court precedent, a necessary component of obtaining AEDPA relief; and Mr. Kearns' suggestion that he is completely barred from seeing his children is not accurate. (ECF Doc. 11 pp. 2-4.)

## II. Law & Analysis

### A. Standard of Review for Habeas Corpus Petitions Under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States,'" and in most instances may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)). If an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted unless the adjudication of the claim"

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181.

### B. Respondent's Motion to Dismiss

Respondent seeks dismissal of Mr. Kearns' Petition, arguing that Petitioner failed to exhaust available state court remedies as to his sole ground for relief. (ECF Doc. 8.) Without

directly addressing the exhaustion standard, Mr. Kearns argues in response that federal court is the proper venue and dismissal is not warranted for failure to exhaust state remedies because:

> To file this case in state court would require the state court to look at a constitutional issue and significant federal precedent, and then decide to interpret and possibly contradict federal precedent. The United State[s] District Court for the Northern District of Ohio is the proper venue for this matter.

(ECF Doc. 9 p. 4.) He also offers some comments distinguishing the cases cited in Respondent's motion from the present situation. (*Id.* at p. 2.)

The undersigned now turns to the question whether Mr. Kearns met applicable federal habeas exhaustion requirements prior to filing the present Petition.

### 1. Standard Governing Exhaustion of State Court Remedies

A state criminal defendant must exhaust all available state court remedies for his federal constitutional claims by fairly presenting those claims to the state courts before he may raise the claims in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 277, 74 L. Ed. 2d 3 (1982) (explaining § 2254 "requires a federal habeas petitioner to provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim"); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) ("The federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts.") (citing *Franklin v. Rose*, 811 F.2d 322, 324–25 (6th Cir. 1987)); *Manning v. Alexander*, 912 F.2d 878, 880–81 (6th Cir. 1990) ("State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.") (citing 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982)); *Hannah v. Conley*, 49 F.3d 1193, 1195 (6th Cir. 1995) ("Unless an exception applies, a petition must be dismissed for lack of exhaustion if it contains at least one

issue which was not presented to the state court so long as a remedy is still available for the petition to pursue in the state courts.").

As the Supreme Court has explained: "State courts, like federal courts, are obliged to enforce federal law. Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999).

The federal habeas petitioner bears the burden of establishing that his federal habeas claims have been exhausted. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) ( "It is the petitioner's burden to prove exhaustion."); *Jefferson v. Ohio Adult Parole Auth.*, No. 3:21-CV-01808, 2021 WL 5177872, at *2 (N.D. Ohio Nov. 8, 2021) ("The petitioner bears the burden of establishing that he has properly and fully exhausted his available State court remedies with respect to his habeas claims for relief."). To establish that his claims were "fairly presented" to the state courts, the petitioner must demonstrate that he presented both the factual and legal underpinnings of his claims to the state courts. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that he must have presented those claims to the state courts as federal constitutional issues, not merely as issues arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987). Further, it is established that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845; *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990) (indicating that "a habeas petitioner normally must present his claim to the state's highest court in order to exhaust state remedies under 28 U.S.C. § 2254").

11

"The exhaustion doctrine . . . turns on an inquiry into what procedures are 'available' under state law." *O'Sullivan*, 526 U.S. at 847; *see also Rust*, 17 F.3d at 160 (indicating that "[e]xhaustion is a problem only if the state still provides a remedy for the habeas petitioner to pursue"). Uncertainty as to whether a state court will consider a petitioner's claim on the merits does not eliminate the exhaustion requirement. *See Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995) ("Generally, in cases of uncertainty as to whether a state court will consider a habeas petition, we presume that the petitioner will be able to pursue such relief."); *Brewer v. Dahlberg*, 942 F.2d 328, 340 (6th Cir. 1991) ("Any uncertainty whether the courts of Ohio will consider petitioner's habeas claim on the merits is not substantial enough to render resort to state process futile" and it does not "obviate the need to give the courts of Ohio a fair opportunity to pass upon and correct any constitutional deficiency.") (internal citations omitted).

### 2. Whether Mr. Kearns Exhausted Available State Remedies

In his Petition, Mr. Kearns offers the following support for the proposition that his federal habeas claim has been exhausted in the state courts:

> Mr. Kearns does not have any other pending appeal in any other Court, either State or Federal. Mr. Kearns successfully completed the entirety of his sentence issued for his underlying criminal offense. As [Mr.] Kearn's incarceration comes as a result of an Adult Parole authority revocation, there is no other venue for his case to be heard. Therefore, his claim meets the federal exhaustion.

(ECF Doc. 1 p. 2.) In support of the pending motion to dismiss, Respondent argues that Mr. Kearns is incorrect in his assertion that there is no other avenue to have his claim heard. (ECF Doc. 8.) In particular, Respondent argues that potential avenues for relief in state court may include a state habeas petition or a state writ of mandamus action. (*Id.* at p. 7.)

In response, Mr. Kearns argues that no further state court exhaustion is required because his case "deals directly with violation of federal law and precedent." (ECF Doc. 9 p. 2.)

12

Effectively, he argues that state court exhaustion requirements do not apply because a request for relief in the state court would "require the state court to look at a constitutional issue and significant federal precedent, and then decide to interpret and possibly contradict federal precedent." (*Id.* at p. 4.)

Mr. Kearns' suggestion that exhaustion is not required because his challenge is based on federal law is not well-founded. Although federal habeas courts do not "reexamine state-court determinations on state-law questions," *Estelle v. McGuire*, 502 U.S. 62, 63, 112 S. Ct. 475, 477, 116 L. Ed. 2d 385 (1991), state courts do regularly hear and decide claims based on alleged federal constitutional violations. Indeed, the U.S. Supreme Court has observed:

> State courts, like federal courts, are obliged to enforce federal law. Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.

*O'Sullivan*, 526 U.S. at 844. That is the foundation for the requirement that a "habeas petitioner must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." *Anderson*, 459 U.S. at 6.

Since Mr. Kearns has not shown an appropriate basis to excuse his obligation to exhaust state remedies, this Court must consider whether there are available state court remedies for him to pursue. *See O'Sullivan*, 526 U.S. at 847 ("The exhaustion doctrine . . . turns on an inquiry into what procedures are 'available' under state law."). Specifically, it must be determined whether there are avenues in state court where Mr. Kearns may challenge the post-release control sanctions that he contends violate his federal constitutional rights under the First and Fourteenth Amendments. (ECF Doc. 1, ECF Doc. 9.)

Although "[t]here is no appeal from a parole revocation decision," the Supreme Court of Ohio has held that other remedies are potentially available to a petitioner who challenges a

13

parole board's revocation decision, including a state habeas petition or state mandamus proceedings. *See Wright v. Ghee*, 1996-Ohio-283, 74 Ohio St. 3d 465, 467, 659 N.E.2d 1261, 1263 (1996). With respect to state habeas petitions, the court noted that "habeas will lie for nonjurisdictional deprivations of liberty if there is no adequate legal remedy," as in actions challenging parole revocation decisions. *Wright*, 74 Ohio St. 3d at 467. With respect to state writ of mandamus proceedings, the court found that the constitutional violation alleged by the defendant in that case had stated "a potentially good cause of action in mandamus." *Id.*

In another decision, the Ohio Supreme Court observed that state habeas corpus actions had been found "unavailable to complain about parole conditions that allegedly restrict a petitioner's liberty," but went on to observe that "either declaratory judgment or mandamus is the appropriate and adequate legal remedy" in cases where habeas corpus proceedings were unavailable. *State ex rel. Smirnoff v. Greene*, 1998-Ohio-526, 84 Ohio St. 3d 165, 168, 702 N.E.2d 423, 425 (1998).

The Sixth Circuit has recognized that state court exhaustion requirements apply to federal habeas challenges to conditions imposed by state parole authorities. In *Brewer v. Dahlberg*, the court held that the district court was correct in dismissing a federal habeas petition for failure to exhaust state remedies because "the writ of habeas corpus is the proper state remedy for review of petitioner's constitutional claim." 942 F. 2d at 336-39. The court noted:

> It is rare that a § 2254 action in federal court is the first challenge to be allowed to a state action, because it would deny the state court the opportunity to examine the constitutionality of its own procedures. … Any uncertainty whether the courts of Ohio will consider the petitioner's habeas claim on the merits is not substantial enough to render resort to state process futile. … Nor does it obviate the need to give the courts of Ohio a fair opportunity to pass upon and correct any constitutional deficiency.

*Id.* at 340 (citations omitted).

14

Other federal courts have similarly held that federal habeas petitioners failed to exhaust their state court remedies for challenges to state parole board decisions. *See, e.g., Papenfus v. Tibbals,* 289 F. Supp. 2d 897, 900-01 (N.D. Ohio 2003) (finding petitioner had "not met the exhaustion requirements for petitioning for federal habeas relief because state habeas corpus or mandamus relief may be available to him"); *Jefferson*, 2021 WL 5177872 at *4-5 (dismissing challenge to parole board decision because petitioner did not meet "burden of establishing that he … properly and fully exhausted his available State court remedies"; noting "a petitioner may exhaust his State remedies by raising his claims challenging a parole board decision in a State habeas corpus petition … or a writ of mandamus…") (citations omitted); *see also Hurst v. Pribe*, No. 2:14-cv-2552, 2014 WL 7015184, *4 (S.D. Ohio Dec. 11, 2014) (finding 42 U.S.C. § 1983 challenge to condition of parole could not be construed as federal habeas challenge because plaintiff did not allege he had "pursued any state remedies challenging the conditions of his parole," making the claim "subject to dismissal for failure to exhaust available state remedies") *report and recommendation adopted*, No. 2:14-CV-2552, 2016 WL 1444241 (S.D. Ohio Apr. 13, 2016).

In this case, while Mr. Kearns filed a motion with the state trial court seeking to terminate his post-release control (ECF Doc. 8-1 pp. 71-76), he did not appeal the denial of that motion through the state's ordinary appellate process. He also did not seek state habeas relief or a state court writ of mandamus to address the alleged violations of his First or Fourteenth Amendment rights described in the Petition. Although Mr. Kearns bears the burden to demonstrate that he exhausted his federal habeas claims in state court, *Rust*, 17 F.3d at 160, his brief in opposition to the motion to dismiss only addresses exhaustion in a peripheral manner by making a few factual distinctions between this case and some of the cases cited by Respondent (ECF Doc. 9 p. 2).

The undersigned finds that Mr. Kearns has not met his burden to establish that he fully exhausted his federal habeas claim in state court. As discussed above, there is adequate authority to support a finding that state remedies may be available to Mr. Kearns, including state habeas and/or state mandamus proceedings, and that Mr. Kearns has not pursued either avenue of relief. Even to the extent there is some uncertainty as to the availability of those proceedings in this case, the undersigned must resolve any uncertainty in favor of requiring exhaustion, in order to ensure that "the courts of Ohio [are given] a fair opportunity to pass upon and correct any constitutional deficiency." *Brewer*, 942 F.2d at 340.

For the reasons set forth herein, the undersigned finds that Mr. Kearns has not met the exhaustion requirements for seeking federal habeas relief.

3. **Appropriate Remedy for Failure to Exhaust State Court Remedies**

Respondent argues that Mr. Kearns' failure to exhaust state court remedies requires dismissal of his Petition, rather than a stay. (ECF Doc. 8 pp. 7-8.) While Mr. Kearns opposes dismissal, but he does address the distinction between a dismissal and a stay. Generally, district courts have discretion to stay federal habeas "mixed petitions," which assert both exhausted and unexhausted claims, so that the exhausted claims may be held in abeyance while the unexhausted claims are presented to the state courts. *See Rhines v. Weber*, 544 U.S. 269, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005).

Here, Mr. Kearns asserts only a single unexhausted claim rather than a "mixed petition," making a stay-and-abeyance under *Rhines* inappropriate. Mr. Kearns has made no argument for a stay under any other standard, and the undersigned does not find a stay to be an appropriate remedy in this case. *See generally Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L.

Ed. 2d 945 (1997) (noting a district court has "broad discretion to stay proceedings as an incident to its power to control its own docket").

Although the undersigned finds dismissal of the Petition to be the appropriate remedy in this case, given the prospect that Mr. Kearns could obtain appropriate relief through the state courts, it is observed that equity requires this Court to avoid a situation where "a dismissal without prejudice would appear to be a hollow victory" because Mr. Kearns could return to federal court after exhausting state remedies only to find that the AEDPA statute of limitations has expired. *See Papenfus*, 289 F. Supp. 2d at 902.

Accordingly, like other courts, the undersigned finds dismissal of the Petition without prejudice should be accompanied by prospective equitable tolling of the statute of limitations during the pursuit of appropriate remedies through the state courts. *See Papenfus*, 289 F. Supp. 2d at 903; *Moon v. Robinson*, No. 1:12CV1396, 2013 WL 3991886, at *8 (N.D. Ohio Aug. 2, 2013) (dismissing unexhausted petition with provisions for equitable tolling); *Thompson v. Shelton*, No. 3:13-CV-00529, 2014 WL 223378, at *9 (N.D. Ohio Jan. 21, 2014) (same). The undersigned further finds that such tolling should account for the State's "competing interest in finality" by including conditions aimed at moving the case forward without significant delay. *See Moon*, 2013 WL 3991886, at *8; *Thompson*, 2014 WL 223378, at *9.

Accordingly, the undersigned recommends that the Court **GRANT** Respondent's Motion to Dismiss, **DISMISS without prejudice** Mr. Kearns' Petition, and **equitably toll** the ADEPA statute of limitations on the following conditions:

1) Petitioner shall pursue his state remedies within thirty days of the Court's order of dismissal; and

2) Upon exhaustion of his state court remedies, Petitioner shall return to seek habeas corpus relief from the federal court within thirty days of such exhaustion.

17

**C.    Petitioner's Motions for Injunctive Relief and for Entry of Judgment**

As to Mr. Kearns' pending motions for injunctive relief and entry of judgment in his favor (ECF Docs. 3, 4, & 10), the undersigned finds these motions are not properly before the Court because he has failed to exhaust available state court remedies, warranting dismissal of his Petition. Accordingly, the undersigned recommends that the Court **DENY without prejudice as MOOT** Mr. Kearns' motions for injunctive relief (ECF Docs. 3 & 4) and motion for entry of judgment (ECF Doc. 10).[1]

### III.    Conclusion and Recommendation

For the reasons explained above, the undersigned recommends that the Court **GRANT** Respondent's Motion to Dismiss (ECF Doc. 8) because Mr. Kearns has failed to exhaust available state remedies, **DISMISS without prejudice** Mr. Kearns' Petition, and **equitably toll** the AEDPA statute of limitations with respect to the claim raised in the Petition on the condition that Mr. Kearns pursue his state remedies within thirty days of the Court's order of dismissal and return to federal court within thirty days following exhaustion of his state remedies. The undersigned also recommends that the Court **DENY without prejudice as MOOT** Mr. Kearns' motions for injunctive relief (ECF Docs. 3 & 4) and entry of judgment (ECF Doc. 10).

Dated: December 28, 2022

/s/ *Amanda M. Knapp*
───────────────────────
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

---

[1] The undersigned also observes that the Petition includes a request that this court issue a federal writ of mandamus "[s]hould this matter be decided after his release" from incarceration. (ECF Doc. 1 p. 8.) The undersigned does not find that this limited mention of federal mandamus relief warrants a formal determination at this time, particularly given case law suggesting that federal courts lack jurisdiction to direct state officials to perform their duties. *See In re Anderson*, 453 F. App'x 162, 164 (3d Cir. 2011) (citing *White v. Ward*, 145 F.3d 1139, 1139 (10th Cir. 1998) (federal court lacks authority to direct state court to perform its duty); *Demos v. U.S. Dist. Ct. For E. Dist. of Washington*, 925 F.2d 1160, 1161 (9th Cir. 1991) (same)).

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).